**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 18-10171-DJC** |
| | ) | |
| **TAM V. NGUYEN,** | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On June 6, 2019, the defendant TAM V. NGUYEN pleaded guilty to conspiracy to collect extensions of credit by extortionate means and illegal gambling business. This defendant is scheduled for sentencing on October 23, 2019. The government hereby submits its sentencing memorandum and respectfully requests that the Court impose a sentence of 27 months' imprisonment.

## I. BACKGROUND OF THE CASE

This case is about violence: specifically, the defendant's attempt to collect a gambling debt by threats of violence.

The debt arose from the defendant's bookmaking business. Starting sometime in the Fall of 2016 and continuing into the summer of 2017, VINH HUYNH operated a large illegal, sports bookmaking organization. The defendant NGUYEN was a bookmaker for HUYNH and conspired with him to collect a gambling debt by extortionate means from "VICTIM." PSR ¶ 8.

VICTIM bet with NGUYEN and lost about $40,000. VICTIM only paid a partial amount of this debt to NGUYEN initially. VICTIM believed that NGUYEN transferred the debt to HUYNH, who collected the debt from VICTIM by threatening to beat him up if he did not pay.

PSR ¶ 19. There was actually never a transfer of debt, as NGUYEN settled his accounts with HUYNH in total, covering the money owed by VICTIM with oter gamblers who were part of NGUYEN's "book." PSR ¶ 20. As a result, it was actually NGUYEN who was owed money, money that he wanted for himself. Nevertheless, they invented a ruse to ease collection of debt by making HUYNH'S threats more credible. *Id*.

HUYNH met with VICTIM several times in person, sometimes with NGUYEN, and when VICTIM would not pay, HUYNH would threaten him with "tough" words – though, to be certain, VICTIM was never physically harmed. PSR ¶ 21. NGUYEN also had a personal interaction with VICTIM on April 29, 2017, during which he told VICTIM if he was not going to pay as promised then VICTIM should be worried. PSR ¶ 26.

On April 29, 2017, over an intercepted phone call, NGUYEN discussed with HUYNH how to get money from VICTIM. NGUYEN suggested that HUYNH tell VICITM that he would charge interest only until VICTIM had paid the principal. NGUYEN said, "[r]ight now, go ahead and be firm, be firm with him. That will make him afraid and try hard to take care of it. That's all. Later on, to give him, that's our business." PSR ¶ 27. Of course, they did not need the interest when all of the money to be collected would go into NGUYEN's pockets.

On June 11, 2017, HUYNH and NGUYEN had several more intercepted conversations where they discussed that HUYNH should collect $1,000 a month from VICTIM until the debt was paid. During one conversation, NGUYEN suggested not charging VICTIM interest any more. The following conversation ensued:

HUYNH: "Now, uncle, if you want—if you don't want to charge him interest, OK; but I'll charge him $500 for myself; otherwise, if you want to give it to

        him than it's totally up to you, uncle."

NGUYEN: "So the interest is [unintel.]"

HUYNH: "Now if he pays, if he continues to pay the interest like that every month, I'll give it to you. I don't work for free: I had to call him and cursed him out, I had to go back and forth, called and talked, back and forth, it's quite a pain. It is his fucking thing and he doesn't take care of it, that's his business, that's it.

PSR ¶ 31. Later, HUYNH suggested how they could tell VICTIM they were no longer charging interest:

HUYNH: "How do I say it, should I say they no longer charge interest?"

NGUYEN: "It's not that. I'm saying, you say this, 'Now mother-fucker, I'm going to charge you just $200 a month' so he could, or how, what do you think we should say?"

PSR ¶ 32. Ultimately they agreed they would tell VICTIM that the money came from them and he must pay on time every month, principal with no interest. PSR ¶ 33. The collections continued through June 2017. PSR ¶ 34-36.

In August 2017, HUYNH was arrested and the collections ceased. In January 2018 HUYNH was temporarily released from jail. According to information obtained from a search on NGUYEN's phone, at that time, NGUYEN attempted to contact VICTIM again to collect the still outstanding debt. PSR ¶ 37.

## II. ADVISORY SENTENCING GUIDELINES ANALYSIS

The government adopts the Guidelines analysis in the PSR. Count One (extortionate


collections conspiracy) is base offense level 20 with no enhancements. PSR ¶¶ 42, 47. Count Two (the illegal gambling business) forms a separate group, which is base offense level 12 with no enhancements. PSR ¶¶ 48, 53. Accordingly, the highest group is level 20 and the NGUYEN has one and one half units, resulting in an additional level, yielding a combined adjusted offense level 21. PSR ¶¶ 54-57.

NGUYEN receives a three level decrease for acceptance of responsibility. PSR ¶¶ 59-60. At total offense level 18, and Criminal History Category I, his guidelines sentencing range is 27 to 33 months. PSR ¶ 94.

## III.   SECTION 3553(a) FACTORS

The government requests a sentence of 27 months' imprisonment. Examination of the § 3553(a) factors demonstrates that this sentence is warranted and reasonable and consistent with other sentences for applicable crimes.

### A.   Nature of the Offense and Respect for the Law

Illegal gambling is widespread, especially among Asians, including Asian-Americans. Nevertheless, the gravamen of this case is *not* gambling—it's extortion. The defendant's bookmaking, while illegal by itself, is important because it set up the defendant's extortion.

And extortion is a crime of violence. The defendant intended to create fear in the defendant, sufficient to motivate him to pay the defendant. HUYNH made several attempts to collect the debt in furtherance of the extortion conspiracy, which no doubt had the effect that they intended: fear of violence, which in fact caused VICTIM to resume payments.

### B.   Characteristics of the Defendant

The conversations between HUYNH and NGUYEN reveal that NGUYEN was an active

participant in concocting the extortion scheme to collect his debt from VICTIM. In fact, NGUYEN specifically told HUYNH to instill fear in VICTIM, even feeding HUYNH specific lines to threaten VICTIM.

Though in some phone calls NGUYEN expressed sympathy for VICTIM, the continuous nature of his extortionate collection means reflect little actual remorse for his methods. From April through August of 2017 NGUYEN kept up his story to continue to extract payments from VICTIM through verbal threats. Further, even after the government stopped the conspiracy when it arrested HUYNH, NGUYEN resumed his attempt to collect the debt himself, directly from the defendant, after HUYNH was temporarily released from jail and thereby a credible threat. At that point, he certainly should have known better, particularly about the potential consequences of his actions.

This activity stands in stark contrast to the other aspects of the defendant's life. He emigrated to the United States from Vietnam and became a U.S. citizen in 2011. PSR ¶ 72. He has an education, a supportive family, and a good job. PSR ¶¶ 77, 86, 88. There was no reason, and no excuse, for the defendant to conspire to collect a debt by extortion. Moreover, this was not a one time offense; defendant participated in the conspiracy over a course over many months and returned to it even after HUYNH was already arrested, for the same offense.

**C. The Need For General Deterrence**

The ubiquity of gambling, and gambling debts, combined with the unenforceability of those debts by legal means, actually emphasize the need for deterrence here. The defendant and HUYNH felt justified in taking steps to enforce that debt. This attitude is simply wrong. The

Court should send a strong message to deter anyone from taking the law into his own hands, especially to enforce an illegal debt by violent means. Gambling is how NGUYEN amassed debts, debts which he collected by extortionate means, including threats of violence.

**D. Comparison To Other Defendants**

Although the defendant was charged individually, his case is related to *United States v. Vinh Huynh, Quang PT Le, Kim Nguyen, and Ban Tran*, Case No. 17-10260-LTS. The sentences in that case demonstrate that these are serious offenses which merit significant sentences. A lead defendant, Quant PT Le, was sentenced to 72 months in prison for kidnapping, which is more serious than any of the offenses here, conspiracy to collect extensions of credit by extortionate means, and illegal gambling business. A second defendant, Vinh Huynh was sentenced to 440 days' incarceration, after a government motion. A third defendant, Kim Nguyen, was sentenced to one year and one day, although Kim Nguyen mitigated his culpability by moving away from Boston, severing his ties to the conspirators, and embarking on a new life prior to his arrest in the case. The final defendant, Ban Tran, had been charged only with illegal gambling business, later pled guilty to a superseding information which charged misprision of a felony, and was sentenced to eight months in prison.

**E. Other Sentencing Provisions**

The government also requests a fine of $5,000, which is less than the guidelines amount. While not wealthy, the defendant has a positive monthly cash flow of $1,675. PSR ¶¶ 91-92. The defendant's crimes were motivated by financial gain and therefore the punishment should include a reasonable financial penalty, both for defendant's sake and for deterrence purposes. Furthermore, the government is not seeking a forfeiture order.

In addition, the government requests a term of two years of supervised release with no special conditions. It appears that the defendant does not require specialized supervision by the probation department because the defendant already has an education, employment, and other life skills.

## IV. THE GOVERNMENT'S RECOMMENDATIONS

For the reasons stated above, and pursuant to 18 U.S.C. §3553(a), the government requests that the Court impose the following sentence:

(a) incarceration for a term of 27 months;

(b) a fine of $5,000;

(c) 24 months of supervised release; and

(d) a mandatory special assessment of $200.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By: s/ Timothy E. Moran
TIMOTHY E. MORAN
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Timothy E. Moran, Assistant U.S. Attorney, certify that I caused a copy of the foregoing sentencing memorandum to be served by email to defense counsel.

s/ Timothy E. Moran
TIMOTHY E. MORAN
Assistant U.S. Attorney

Dated: October 18, 2019